## DEARBORN FIRE FIGHTERS ASSOCIATION v. CITY OF DEARBORN.

1. MUNICIPAL CORPORATIONS—SALARY PLAN FOR CITY EMPLOYEES—CONSTRUCTION OF RESOLUTION.

Under unambiguous municipal charter provisions relative to salary plan for city employees prepared by civil service board and adopted by city council, the fact that for several years there had been operation under the plan and amendments thereto by the concurrent action of the civil service board and the council did not preclude interpretation of resolution adopting the plan that it was operative at a time as to which there was no new specific resolution modifying the plan (Dearborn Charter, § 9.6[8]).

2. SAME—CONSTRUCTION OF RESOLUTION—INTENT.

In construing resolution of a city council, the basic requirement is that the intent shall be ascertained and given effect.

3. SAME—CONSTRUCTION OF RESOLUTION—INTENT.

When the language of a city council's resolution is clear and unambiguous, the intent manifested thereby must be recognized.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 37 Am. Jur., Municipal Corporations, § 187.
[6] 34 Am. Jur., Mandamus, § 68.
[7, 8] 34 Am. Jur., Mandamus, §§ 42, 70.
[10] 14 Am. Jur., Costs, §§ 23, 91.

4. SAME—SALARY PLAN FOR CITY EMPLOYEES—CIVIL SERVICE BOARD. —CITY COUNCIL—COST-OF-LIVING ADJUSTMENTS.

Failure of a city civil service board and the city council to agree as to the salaries to be paid for any fiscal year under municipal salary plan cannot deprive the city employees of their rights as to cost-of-living adjustments as fixed by such salary plan provided for by city charter, prepared by civil service board and adopted by the city council (Dearborn Charter, § 9.6[8]).

5. SAME—CONSTRUCTION OF RESOLUTION—SPECIFIC AND GENERAL PROVISIONS.

Under resolution of city council adopting salary plan for city employees, provided for by charter and prepared by civil service board, in which one section made certain provisions for first fiscal year the plan was in operation, another section which did not specifically refer thereto but contained provisions pertinent to any fiscal year, the rights of employees for a subsequent fiscal year were determinable under the later section without the modification pertinent to the first fiscal year (Dearborn Charter, § 9.6[8]).

6. MANDAMUS—DISCRETIONARY ACTS.

Mandamus will not lie to direct or control a discretionary act.

7. SAME—MUNICIPAL EMPLOYEE'S SALARY PLAN—MINISTERIAL DUTIES.

Where salary plan for city employees was drafted in certain and definite language as to cost-of-living adjustments contained therein, the employees were entitled to writ of mandamus compelling defendant city officers to make provision for compensation in accordance therewith, since defendants' duties were ministerial in character and there was no other adequate remedy (Dearborn Charter, § 9.6[8]).

8. SAME—ADEQUACY OF OTHER REMEDIES.

Where there was no other adequate remedy than mandamus and plaintiffs made proper showing they were entitled to compel city officers to perform certain ministerial duties, the trial court did not abuse his discretion in granting relief sought.

9. SAME—EVIDENCE—COST-OF-LIVING ADJUSTMENT IN MUNICIPAL SALARY PLAN.

In mandamus proceeding by city employees against city, city council and civil service board to compel defendants to pay plaintiffs compensation in accordance with cost-of-living adjustment in charter salary plan that had been prepared by

board, approved by council and subsequently modified pursuant to concurrent action of such bodies, order made was supported by sufficient proof of the requisite degree of certainty to support findings of the court on which order rested, where there were facts not in dispute and plaintiffs' affidavit was sufficient to supply other facts (Dearborn Charter, § 9.6[8]).

10. COSTS—MANDAMUS—PUBLIC QUESTION—CONSTRUCTION OF RESOLUTION.

No costs are allowed in mandamus proceeding by city employees to compel payment of compensation in accordance with cost-of-living adjustment incorporated in salary plan that had been duly adopted, a public question involving construction of resolution adopting such plan being involved (Dearborn Charter, § 9.6[8]).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 12, 1948. (Calendar No. 44,100.) Decided January 3, 1949.

Petition by Dearborn Fire Fighters Association, an unincorporated association, and others against City of Dearborn and others for writ of mandamus to compel the raising and appropriation of funds to pay salaries. Municipal Employees Association, an unincorporated association, intervened. Writ granted. Defendant City of Dearborn and others appeal. Affirmed.

*Edward N. Barnard* and *Robert E. Wilcox,* for plaintiffs.

*John J. Fish,* for intervenors.

*Dale H. Fillmore,* Corporation Counsel, for defendants and appellants.

CARR, J. Plaintiffs filed their petition in the circuit court for Wayne county, asking for a peremptory writ of mandamus requiring the defendants, the city of Dearborn, the common council, the civil

service board, and individual officers of the city, to proceed to raise and appropriate necessary funds to meet the salaries and wages of the individual plaintiffs and other employees of the city during the fiscal year beginning July 1, 1947, and ending June 30, 1948, and to make payments thereof, in accordance with the municipal pay plan. The charter of the city of Dearborn, adopted on November 3, 1942, made it the duty of the civil service board to represent the public in the personnel administration of the city service, to certify payrolls as prescribed by the charter, and, specifically, "to prepare or cause to be prepared, a salary plan for the positions of the city service together with regulations for the administration of such plan. This suggested plan shall be submitted by the civil service board to the city council for approval and shall when adopted constitute the official salary plan for positions of the city service." Dearborn Charter, § 9.6(8).

In accordance with the provision quoted, the civil service board prepared a plan for the fixing of salaries and wages of employees of the city, which plan was adopted by the council in April, 1943. Section 1 of the resolution contained a schedule, setting forth classes of employees, and salaries thereof, including cost-of-living adjustments. The following sections are material in the present case:

"SEC. 2. The salary or rate of pay for each employee in the classified service for the fiscal year beginning July 1, 1943, and annually thereafter, shall be in accordance with the classifications in the rates of compensation as set forth in section 1; that said salary or rate of pay shall be the base pay as hereinafter defined, and shall be subject to the minimum, service increment, maximum, and cost-of-living adjustment as herein specified; that said service increment shall be the sum designated after each classification in section 1, and shall be added to the base

pay annually received by each employee in the classified service, until the maximum salary for the classification has been reached; provided, that a new employee, who has served the probationary period of six months, and who has been certified as a permanent employee, shall be entitled to receive the service increment in the sum designated for said classification beginning with the date of said certification and continuing annually thereafter until the maximum salary for the classification has been reached; provided, further, that the service increment shall be added to a permanent employee's salary only in the event the appointing authority indicates the work of the employee is satisfactory so as to merit the service increment.

"Sec. 5. In addition to the compensation and service increment as set forth in the preceding sections, for the fiscal year beginning July 1, 1943, each employee in the classified service on said date and each employee added to said service during said fiscal year, shall receive for said fiscal year (1) a cost-of-living adjustment in the sum of $100 or $150 as indicated in section 1 above, depending on the classification; (2) an additional 10 per cent. cost-of-living adjustment computed upon his base pay, as herein defined; provided, the 10 per cent. cost-of-living adjustment herein designated shall not in any event exceed $300 to any one employee; (3) an additional 3 per cent. cost-of-living adjustment to all employees in the classified service who are now on an hourly rate computed on said base pay.

"Sec. 6. The term base pay as herein used, is hereby defined to mean the salary including all annual service increments received by the employee, less any and all cost-of-living adjustments.

"Sec. 7. The percentage for cost-of-living adjustments in salaries shall be determined from the reports published by the United States department of labor, bureau of labor statistics, on the cost-of-living, as determined for Detroit, Michigan, as of December 15th of each year, and such percentage shall

be the basis for determining whether or not cost-of-living adjustment in salaries shall be made in the budget for the coming fiscal year; provided, that where such percentage does not show a variation in cost of living of more than 2 per cent. as compared with the preceding year, the cost-of-living adjustment shall not be disturbed, provided further, that when there is a variation in the cost of living in excess of 2 per cent. since the last adjustment was made, in that event an adjustment shall be made in accordance with the variation for the following fiscal year."

A number of resolutions modifying details of the plan were subsequently adopted by the council, most of them, and perhaps all, on the recommendation of the civil service board. Several such modifications were limited to specific years, and none made any material change in the plan. Appellants suggest, however, that their making indicated a practical interpretation placed by the council and the civil service board on the provisions of the plan as originally adopted, and supports the theory that changes in compensation of employees from year to year could be brought about only by agreement on the part of the board and council.

It does not appear that any material differences of opinion with reference to the salary schedule arose between the civil service board and the council until the matter of fixing salaries for the fiscal year beginning July 1, 1947, came up for consideration. The board recommended increases for cost of living adjustments on the basis of the report published by the United States department of labor, bureau of labor statistics, referred to in section 7 of the salary plan, above quoted. It appears that the cost of living percentage so reported for the Detroit area as of December 15, 1946, taking as a basis the average for the years 1935 to 1939, inclusive, was

153.1. The council failed to approve the recommendation.

The defendant civil service board filed an amended answer in the case, admitting the material averments of plaintiffs' petition and the right to the relief sought. The other defendants by their answer challenged the interpretation placed by plaintiffs on pertinent provisions of the salary plan, asserted that such interpretation was at variance with the manner in which such plan had been administered for over 4 years following its adoption, and denied that plaintiffs were entitled to the relief sought by way of a peremptory writ of mandamus.

Plaintiffs contended before the trial court that the salaries paid to employees for the fiscal year beginning July 1, 1947, should be determined under the official salary plan on the basis of the base pay, as defined in the plan, plus the cost-of-living adjustment indicated by the report of the United States department of labor. The trial court, in a written opinion filed in the case, accepted the plaintiffs' theory. Thereafter, and before the filing of an order based on the opinion, the civil service board proposed a new salary plan which the council approved, effective January 7, 1948. The plan involved in the instant case, adopted in April, 1943, was superseded thereby. The action taken having been called to the attention of the trial court, on motion for rehearing, the order entered was directed to the compensation of city employees subject to the salary plan for the period beginning July 1, 1947, to and including January 6, 1948. The motion for rehearing was denied; and defendants, other than the civil service board, have taken an appeal in the nature of certiorari on leave granted.

The principal question at issue is the interpretation of section 7 of the salary plan. Plaintiffs insist that its provisions are mandatory, and possess

such clarity as to leave no doubt as to the intent of the civil service board and the council at the time of adoption in April, 1943. On behalf of appellants it is argued that section 7 must be construed in connection with section 5, and that in practical effect it is modified thereby. It will be noted, however, that section 5 has reference to the compensation of city employees in the classified service during the fiscal year beginning July 1, 1943. Section 7 contains no specific reference to the prior section.

An analysis of section 7 does not disclose any ambiguity. There is nothing therein to suggest that the plan, as outlined, was not intended to be operative unless the civil service board and the council were in accord as to adjustments in compensation to employees for any fiscal year. Apparently, as noted, there was no material disagreement prior to the fiscal year beginning July 1, 1947. There is no inconsistency between operation under the plan and amendments thereto, from year to year, by the concurrent action of the civil service board and the council, and an interpretation of section 7 leading to the conclusion that its specific provisions govern any period of time as to which there has been no modification of the plan. This applies to the period in question here, from July 1, 1947, to January 7, 1948.

In construing the provisions of the resolution setting forth the salary plan, it is a basic requirement that the intent shall be ascertained and given effect. When the language used is clear and unambiguous, as in the instant case, the intent manifested thereby must be recognized. *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A. L. R. 827); *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich. 225; *Board of Education of the City of Detroit* v. *Superintendent of Public Instruction,* 319 Mich. 436.

So long as the plan remained in operation, employees of the city in the classified service list were entitled to have their compensation determined on the basis fixed in the resolution as existing at time of the rendition of their services. Failure on the part of the civil service board and the council to agree as to the salaries to be paid for any fiscal year could not deprive employees of their rights as fixed by such plan. If, as appellants suggest, an interpretation has been placed on the language of section 7 of the resolution at variance with its clearly expressed intent, such interpretation must be disregarded. Appellants' claim, as to the construction of section 7 of the resolution, is not well founded.

It is also claimed that the trial court was in error in granting the writ of mandamus sought by plaintiffs. Such claim is predicated on the theory, above referred to, that employees were not entitled to a cost-of-living adjustment in salaries except on action by the civil service board, approved by the council. Attention is called to the decision of this Court in *Local 321, State, County & Municipal Workers of America* v. *City of Dearborn,* 311 Mich. 674. There the plaintiffs sought by mandamus to compel compliance with a resolution of the city council of Dearborn with reference to the pay of city employees, adopted March 2, 1943, and intended to operate for the balance of the fiscal year. Such action had not been approved by the civil service board, and this Court, construing the same provisions of the charter that are involved in the instant case, held that the resolution was not effective, and that the charter provisions in question were valid as against objections based on constitutional grounds. No question as to the operation of section 7 of the salary plan as adopted in April, 1943, was involved in the case.

The rule is well established that mandamus will not lie to direct or control a discretionary act. *Toan v. McGinn,* 271 Mich. 28; *Rupert v. Van Buren County Clerk,* 290 Mich. 180; *Solo v. City of Detroit,* 303 Mich. 672; *McLeod v. State Board of Canvassers,* 304 Mich. 120. In the case at bar, however, we are not dealing with discretionary acts. The language of the resolution, which the trial judge concluded ought to be enforced, was certain and definite. It fixed a standard by reference to which the annual cost-of-living adjustment should be made in salaries of city employees in the classified service list. So long as it remained in effect it was controlling with reference to the course to be followed. The right of the plaintiffs was clear and specific, and the duty of the defendants, ministerial in character, was likewise clear. There was no adequate remedy other than mandamus, and the trial court did not abuse his discretion in granting the relief sought. *Chemical Bank & Trust Co. v. County of Oakland,* 264 Mich. 673; *National Bank of Detroit v. State Land Office Board,* 300 Mich. 240; *Bitonti v. Wayne County Auditors,* 311 Mich. 322.

It is further claimed by appellants that the showing before the trial court did not justify the specific order made. The order referred to an affidavit filed in the cause on behalf of plaintiffs, the affiant being the secretary of the civil service board. Said affidavit set forth the cost-of-living increase, for the Detroit area, reported by the Federal department of labor as of December 15, 1946, and indicated the adjustments necessary to be made in the compensation of different classes of city employees, in order to comply with the salary plan. Appellants' claim is, in effect, that the order of the trial court as made should be set aside because the showing did not justify it. By way of argument, objections are made to certain averments in the affidavit. It cannot be

said, however, that the trial court was in error in relying on facts that were not in dispute and on the proofs offered by plaintiffs, and in entering an order accordingly. The record shows that there was sufficient proof, of the requisite degree of certainty, to support the findings of fact on which the order rested.

The order of the trial court is affirmed. The issues involved in the case being of public interest, no costs are allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.